[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11963
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cv-01045-BJD-MCR


VALINDA CARTER,

Plaintiff-Appellant,

versus

COLUMBIA COUNTY, BOARD OF COUNTY COMMISSIONERS,
MARK HUNTER,
in his official capacity as Sheriff, Columbia County, Florida,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 30, 2014)

Before HULL, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Valinda Carter appeals the district court's grant of summary judgment to Defendants on her race discrimination and retaliation claims asserted under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the Florida Civil Rights Act (the "FCRA"), Fla. Stat. § 760.01 *et seq*. Plaintiff's claims arise out of her termination as a dispatcher and shift supervisor for the Columbia County Communications Center.   The district court found that Plaintiff failed to establish a prima facie case of discrimination or retaliation and, alternatively, that Plaintiff did not present any evidence of pretext to rebut the legitimate reasons offered to explain her termination.   For the reasons that follow, we affirm.

## I. BACKGROUND

Plaintiff, an African-American woman, began working as a dispatcher in the Columbia County Sheriff's Office in 1999.   In December 2008, the Columbia County Board of County Commissioners ("CCBCC") transferred the Sheriff's dispatch unit to a centralized County Communications Center.   As a result of the transfer, Plaintiff became an employee of the CCBCC.   Plaintiff was promoted to the position of shift supervisor in August 2009.   In this position, Plaintiff continued to perform her regular dispatching duties but also assumed responsibility for training new hires and monitoring other dispatchers on her shift.

2

The incident that led to Plaintiff's termination occurred on August 1, 2011. Plaintiff was at home when she received a phone call from her brother, Kavin Carter, who had been stopped by Columbia County Deputy Joshua Latimer for a seatbelt violation. According to Plaintiff, the purpose of her brother's call was to maintain an "open line" so that Plaintiff could hear what was happening during the traffic stop. At some point during the stop, Latimer took the phone from Kavin Carter and began speaking to Plaintiff. Plaintiff claims that Latimer was "hostile, arrogant, cocky, and otherwise rude" during his conversation with her.

Latimer immediately prepared a report about the traffic stop and his interaction with Plaintiff. In the report, Latimer stated that he began the conversation by greeting Plaintiff. According to Latimer, he was unable to say anything else because Plaintiff began yelling at him and accusing him of racially profiling her brother. Latimer claimed that he attempted to inform Plaintiff over her yelling that she could call his supervisor, Corporal Greg Horne, if she wished to file a complaint, but that he eventually hung up the phone because he did not want to hear Plaintiff yell at him any longer. Latimer submitted his report, along with a recording of the traffic stop from his dash mounted camera and body microphone, to Corporal Horne. Horne forwarded the report and recording to Captain Jeff Coleman, who then sent the materials to Major Wallace Kitchings.

3

On August 5, 2011, Communications Center Director Sandy Waschek gave Plaintiff a copy of Latimer's report, which she had received from Major Kitchings a few days prior.   Upon learning that the report would be placed in her personnel file, Plaintiff prepared a rebuttal statement.   In her rebuttal, Plaintiff indicated that Latimer conducted himself in an unprofessional and "hostile" manner while speaking with her during the traffic stop, yelling and engaging in an "arrogant, snide, tirade" during which Plaintiff was not allowed to speak.   Plaintiff emailed her rebuttal to Waschek on August 7, 2011.

When Plaintiff drafted her rebuttal, she was not aware that her brother's traffic stop had been recorded by Latimer's dash camera and body microphone.   Major Kitchings sent the recordings to Waschek on August 16, 2011.   After reviewing the recordings, Waschek concluded that they were inconsistent with Plaintiff's account of Latimer's conduct in her rebuttal.   Wascheck met with County Manager Dale Williams and CCBCC Human Resources Director Michele Crummitt to discuss a proper response.   Based on their review of the recordings, Williams and Crummitt agreed that Plaintiff's rebuttal was "blatantly false."   Consequently, Waschek placed Plaintiff on administrative leave pending a full investigation into the incident.

On August 24, 2011, Wascheck met with Plaintiff, Crummitt, and Assistant Director of the Communications Center Patricia Coker.   During the meeting,

4

Waschek informed Plaintiff of the CCBCC's decision to terminate her employment. The stated reason for Plaintiff's termination was violation of a County policy prohibiting lying, falsification of a document, or other dishonesty, as evidenced by the discrepancy between the recorded evidence and Plaintiff's rebuttal statement.

Plaintiff subsequently filed this action asserting race discrimination and retaliation claims under Title VII and the FCRA.   The district court granted summary judgment to Defendants on all of Plaintiff's claims.   This appeal ensued.

## II. DISCUSSION

### A.    Standard of Review

We review *de novo* the district court's grant of summary judgment. *Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1318 (11th Cir. 2012). In conducting our review, we draw all factual inferences and view all evidence "in the light most favorable to the non-moving party."  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).   Summary judgment is only appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).

**B.    Plaintiff's Race Discrimination Claim**

Title VII prohibits employment discrimination on the basis of a statutorily protected characteristic such as race.[1]    42 U.S.C. § 2000e−2(a)(1).    Where, as in this case, a plaintiff relies on circumstantial evidence to prove discrimination, we apply the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).    *Alvarez v. Royal Atl. Developers, Inc*., 610 F.3d 1253, 1264 (11th Cir. 2010).    Under that framework, the plaintiff must first establish a prima case of discrimination.    *Id*.    If the plaintiff meets her burden, the employer can rebut the resulting presumption of discrimination by articulating a legitimate non-discriminatory reason for its challenged employment action.    *Id.*    Plaintiff then has an opportunity to produce evidence that the proffered reason is a pretext for discrimination.    *Id*.

1.    <u>Plaintiff failed to establish a prima facie case of discrimination</u>.

The available methods of establishing a prima facie case "are flexible and depend on the particular situation."    *Id.*    As relevant to this case, Plaintiff can meet

---

[1] The same analysis applies to Plaintiff's Title VII and FCRA claims.    *See Jones v. United Space Alliance, L.L.C.,* 494 F.3d 1306, 1310 (11th Cir. 2007) ("Florida courts apply Title VII caselaw when they interpret the FCRA").    Plaintiff also references 42 U.S.C. § 1981 in the opening paragraph of her amended complaint.    To the extent Plaintiff intended to assert a discrimination claim under § 1981, that claim is also governed by the Title VII analysis.    *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257 (11th Cir. 2012) (noting that Title VII and § 1981 claims have the same requirements and are governed by the same analytical framework).

her burden with evidence that (1) she is a member of a protected class, (2) she was qualified for the position that she held, (3) she was terminated from that position, and (4) in terminating her employment, Defendants treated Plaintiff less favorably than a similarly situated employee outside of her protected class.  *Smith v. Lockheed–Martin Corp*., 644 F.3d 1321, 1325 (11th Cir. 2011).  Defendants concede that Plaintiff has shown the first three elements.  As to the fourth element, Plaintiff contends that Defendants treated her less favorably than Tiffany Aderholt, a white dispatcher who was suspended rather than terminated for allegedly similar misconduct.

We agree with the district court that Aderholt is not a proper comparator because she was not "similarly situated" to Plaintiff.  *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (explaining that employees are "similarly situated" for purposes of establishing a prima facie case if they are "involved in or accused of the same or similar conduct and are disciplined in different ways").  Based on the record evidence, Aderholt was disciplined for (1) cursing at a deputy in front of other employees at the Communications Center and (2) subsequently refusing to answer a call from the same deputy and abandoning her work station.  Aderholt's misconduct was classified by the County disciplinary policy as Group I offenses involving discourtesy and warranting suspension, which is the discipline that

7

Aderholt received for both incidents.[2]   Plaintiff, on the other hand, was terminated for lying and making false accusations against Latimer.   Plaintiff's misconduct was classified by the policy as a Group III offense involving lying, falsification of documents, or other dishonesty.   The policy recommended termination for a first Group III offense.

Plaintiff's attempt to reframe Aderholt's misconduct as an offense similar to her own is not supported by the record.   Contrary to Plaintiff's suggestion, there is no evidence that Aderholt falsified documents or asserted fabricated misconduct allegations against another employee.   Moreover, Plaintiff's own assessment that Aderholt's conduct was "much worse" than her own, because it occurred twice and while Aderholt was on duty, is irrelevant.   *See Alvarez*, 610 F.3d at 1266-67 (emphasizing that discriminatory intent must be gauged from the employer's perspective); *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1325 (11th Cir. 2006) ("[d]ifferent types and degrees of misconduct may warrant different types and degrees of discipline").

Although Plaintiff relied solely on a comparator theory in the district court, she argues on appeal that there is other evidence of intentional discrimination sufficient to establish a prima facie case.   As Plaintiff correctly notes, her "failure to

---

[2] Aderholt was terminated in March 2012 for poor work performance.

produce a comparator does not necessarily doom" her discrimination claim.  *Smith,*
644 F.3d at 1328.   Even in the absence of a comparator, summary judgment is
inappropriate if the plaintiff "presents circumstantial evidence that creates a triable
issue concerning the employer's discriminatory intent."  *Id.*   However, Plaintiff has
failed to present such evidence in this case.

As an example of other evidence, Plaintiff cites a warning Waschek allegedly
received from an unidentified person in the Sheriff's Office not to discipline Plaintiff
because she would go to the NAACP.   Assuming this warning occurred, it is not
indicative of intentional discrimination.   If anything, Waschek's neutral
enforcement of the County's disciplinary policy in spite of the warning undercuts
any inference of racial discrimination.   Plaintiff also relies on a statement by Major
Kitchings, during his investigation concerning the rebuttal statement, that this was
not Plaintiff's "first incident."   Plaintiff does not explain, and we do not see, how
this statement could possibly indicate racial animus.   The only other evidence
Plaintiff presents is her own unsubstantiated belief that Defendants "had their minds
made up about Plaintiff from the beginning."   Such conclusory allegations are
insufficient to support a plausible inference of intentional discrimination.  *Mayfield
v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996); *see also Ellis v.*

*England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion").

> 2. Plaintiff failed to rebut the legitimate reason offered by Defendants to explain her termination.

Assuming Plaintiff could establish a prima facie case of discrimination, Defendants still are entitled to summary judgment.   Defendants contend that Plaintiff was fired because she lied and fabricated allegations against Latimer in her rebuttal statement, an offense that warrants immediate termination under the County's disciplinary policy.   Defendants argue further that Plaintiff's false statements called into question her trustworthiness:   an essential quality for a dispatcher.   These explanations constitute legitimate nondiscriminatory reasons for Plaintiff's termination.   *See Holifield*, 115 F.3d at 1564 (describing the employer's intermediate burden as "exceedingly light"); *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (noting that "the employer's burden is merely one of production").

At this stage, Plaintiff must present some evidence of pretext to withstand summary judgment.   *Chapman*, 229 F.3d at 1024-25.   A plaintiff may show pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"   *Jackson v. State of Ala. Tenure Comm'n,*

405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981)).   Whichever method is used, the plaintiff's pretext evidence must permit a reasonable inference that the challenged employment action was motivated by unlawful discriminatory animus. *Alvarez*, 610 F.3d at 1266.   The district court correctly held that Plaintiff failed to meet this burden.

Plaintiff's pretext argument primarily consists of her denial that she ever was dishonest, and her insistence that the information provided in her rebuttal was truthful and accurately described her perception of Latimer's conduct.   This argument does not account for the numerous and obvious discrepancies between the video and audio recording of Latimer's conduct and Plaintiff's description of his conduct in the rebuttal.   Given the recorded evidence, Plaintiff's unsupported denial of misconduct is insufficient to establish pretext.   *Id.* ("[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs").

The only other evidence Plaintiff cites to establish pretext is the more favorable treatment allegedly received by white dispatcher Aderholt.   According to Plaintiff, the inconsistent application of discipline creates doubt about the proffered reasons for Plaintiff's termination and demonstrates hostility towards Plaintiff.   As discussed, the record shows that Aderholt did not engage in the same type of

11

misconduct as Plaintiff.    Thus, the fact that Aderholt did not receive the same discipline as Plaintiff does not demonstrate pretext.    *See Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 n. 1 (11th Cir. 2012) ("The opportunity provided to a plaintiff to show pretext is simply an opportunity to present evidence from which the trier of fact can find unlawful discrimination.").

### C.    Plaintiff's Retaliation Claim

Title VII's anti-retaliation provision prohibits retaliation against an employee for opposing a discriminatory employment practice or participating in an "investigation, proceeding, or hearing" concerning employment discrimination.    42 U.S.C. § 2000e−3(a).    Retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework discussed above.    *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).    A plaintiff can establish a prima facie case of retaliation by showing that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal relationship between the two events.    *Id.*    The employer then has the opportunity to articulate a non-retaliatory reason for its employment action, which the plaintiff can rebut with evidence of pretext.    *Id.* at 1181-82.

Plaintiff acknowledges that she did not actually engage in any protected

12

activity.   In support of her prima facie retaliation case, Plaintiff relies on a "perception theory" of protected conduct.   *See Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561 (3d Cir. 2002).   Under the perception theory, a plaintiff can show retaliation based on her employer's mistaken belief that she engaged in protected activity.   *Id.* at 571-72.   Although Plaintiff denies that she ever complained about race discrimination, she claims that she was targeted and ultimately terminated because Defendants mistakenly believed Latimer's report that Plaintiff had accused him of racial profiling.   According to Plaintiff, this satisfies the protected activity requirement.

We have not adopted the perception theory of retaliation, and this case does not require us to decide whether the theory is valid in this Circuit.   Assuming Plaintiff can somehow establish protected activity and the other prongs of her prima facie case, Defendants assert that Plaintiff was terminated because she lied and fabricated allegations against Latimer in her rebuttal statement.   Plaintiff's conduct, which is well-documented in the record, was categorized as a Group III offense warranting immediate termination under the County's disciplinary policy.   In addition, Plaintiff's rebuttal statements called into question her trustworthiness, which is an essential quality for a dispatcher.   These explanations constitute legitimate non-retaliatory reasons for Plaintiff's termination, which Plaintiff has

13

failed to rebut with any evidence of pretext.   Defendants are thus entitled to summary judgment on Plaintiff's retaliation claim.   *See Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (affirming summary judgment on a plaintiff's retaliation claim where she failed to present sufficient pretext to rebut the non-retaliatory reasons offered for her termination).

### III. CONCLUSION

For all of the above reasons, we find that the district court properly granted summary judgment to Defendants on Plaintiff's Title VII and FCRA claims. Accordingly, the district court's judgment is **AFFIRMED.**