[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13422
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-23708-UU

JOE PYATT,

Plaintiff-Appellant,

versus

AECOM TECHNICAL SERVICES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 13, 2021)

Before JORDAN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Joe Pyatt, proceeding *pro se*, appeals the district court's order granting AECOM Technical Services' motion for summary judgment in his employment discrimination suit under the Florida Civil Rights Act.  Mr. Pyatt also appeals the denial of his motion to extend discovery.  After careful review of the parties' briefs and the record, we affirm.

## I

### A

On July 7, 2017, AECOM hired Mr. Pyatt for an entry-level position after a referral from one of its employees, Samuel Worthy, who met Mr. Pyatt at a college fair.  Mr. Worthy subsequently raised concerns about Mr. Pyatt turning in unacceptable work product, failing to follow instructions, having problems accepting and implementing feedback, and disregarding instructions.  He relayed these concerns to their supervisor, Gorky Charpentier, in emails dating from March through April of 2018.  On May 7, 2018, at a performance review, managers and administrators at AECOM handed Mr. Pyatt a performance improvement plan ("PIP") addressing his performance and behavior issues.

On June 6, 2018, at another performance review, Mr. Pyatt was "belligerent and argumentative" to his supervisor, Mr. Charpentier.  The next day, Mr. Pyatt sent an email to AECOM's human resources department stating that on October 31, 2017—Halloween of the previous year—Mr. Worthy had brought a black mask to

2

work that Mr. Pyatt considered to be "a notorious representation of black face which is used to mock African Americans." A member of AECOM's employee relations and compliance group, Teresa Pownall, was assigned to investigate the mask incident and found no evidence of discrimination.

Mr. Pyatt's poor work performance continued, and Mr. Charpentier discussed it with him. Mr. Pyatt then sent an email to Ms. Pownall reporting Mr. Charpentier for "unethical behavior." Ms. Pownall once again investigated the incident but found no evidence to substantiate Mr. Pyatt's claim of unethical behavior. On September 11, 2018, Ms. Pownall spoke with Mr. Pyatt, who informed her that he had been working with a different project manager. He described work as calm and claimed things were on a "corrective measure."

On October 1, 2018, Mr. Pyatt had car trouble after leaving work. He asked the security guard to use the phone to call for assistance. Mr. Pyatt waited in the lobby and was seen slouching by the security guard who approached him and informed him he could not sleep there. Mr. Pyatt asserts that the security guard threatened to call the police on him.

Witnesses explained that Mr. Pyatt was yelling and acting aggressive towards the security guard. Ms. Pownall's investigation revealed that a witness advised security personnel at the building next door to contact 911 "due to security and safety concerns." As a result of Ms. Pownall's investigation, Carlos Garcia, AECOM's

Vice President, Florida Transportation State Lead, telephoned Mr. Pyatt on October 9, 2018, and terminated his employment. Neither Mr. Charpentier nor Mr. Worthy participated in the decision to terminate Mr. Pyatt.

**B**

Mr. Pyatt filed an action in Florida state court in January of 2019 asserting claims for race discrimination and retaliation against AECOM. AECOM removed the case from state court to federal court based on diversity jurisdiction under 28 U.S.C. § 1332. On November 12, 2019, Mr. Pyatt filed a second amended complaint in the district court adding two counts to his original claims.[1]

In the parties' joint scheduling report, Mr. Pyatt sought to limit the time to respond to interrogatories and requests for admission to two weeks and proposed a trial date in April of 2020. AECOM proposed that trial be held later, in September of 2020. In December of 2019, the district court issued a scheduling order providing that all discovery must be completed by April 3, 2020, and setting trial for July of 2020. The order provided that "[t]o the extent this Order conflicts with the Local Rules, this order supersedes them." The time allotted for discovery fell between the

---

[1] The only relevant claim on appeal is Mr. Pyatt's race discrimination claim as set forth in Count One. Mr. Pyatt also alleged retaliation (Count Two), harassment and a hostile work environment (Count Three), and wrongful termination (Count Four). The district court dismissed Counts Three and Four with prejudice, and it granted summary judgment to AECOM on Count Two. On appeal, Mr. Pyatt does not challenge these rulings. Accordingly, any issues relating to Counts Two, Three, and Four are abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

"standard" and "express" tracks set out in the Local Rules and did not specify whether the case had been assigned to either track.

On March 2, 2020, Mr. Pyatt filed his first motion to extend discovery, arguing that he was still collecting documents, was forced to change his strategy, and would need to subpoena additional witnesses. In a paperless order, the district court denied that motion. It ordered the parties to appear before a magistrate judge for a discovery conference to resolve any outstanding discovery issues. That conference took place in March of 2020.

On April 14, 2020, Mr. Pyatt filed a second motion to extend discovery arguing that discovery was not complete and that he needed to submit additional discovery requests to prove key material facts in his case. The district court denied the motion, concluding that Mr. Pyatt's arguments did not establish good cause to warrant a delay.

AECOM moved for summary judgment, asserting that Mr. Pyatt could not establish a *prima facie* case of race discrimination or demonstrate pretext. In support, AECOM submitted declarations by Mr. Garcia, Mr. Worthy, Mr. Charpentier, and Ms. Pownall as well as a statement of undisputed material facts. First, AECOM argued that it fired Mr. Pyatt for his poor performance and his altercation with a building security guard, both of which were justified. Mr. Pyatt's argument that AECOM's criticism of his job performance constituted an adverse

employment action was insufficient to support a discrimination claim, and Mr. Pyatt could not identify a similarly situated non-African-American employee who was not terminated for engaging in an altercation.  Second, AECOM argued that the only evidence of alleged discrimination that Mr. Pyatt identified was that Mr. Worthy brought a black Halloween mask to the office.  Moreover, it noted that Mr. Pyatt conceded that Mr. Garcia, not Mr. Worthy, fired him, and there was no evidence of any discriminatory animus by Mr. Garcia.

Mr. Pyatt opposed the motion, responding that he brought forth substantial evidence to prove his claim and to demonstrate that he was treated differently than other employees with regards to using paid time off when not given any work.  He attached several exhibits, including company emails and memoranda, a summary of audio recordings, discovery requests and responses, and pages from his deposition.

In a deposition, an AECOM employee stated that he came to the office frequently on weekends and could charge overtime if it was work-related.  The employee also said that he saw Mr. Pyatt at the office on weekends several times. Mr. Pyatt referred to "material facts" but did not respond to AECOM's statement of undisputed material facts or submit a statement of his own.  He referenced audio recordings which were not provided to the district court.

The district court granted AECOM's motion.  It concluded that (1) Mr. Pyatt failed to establish that he was treated less favorably than a similarly situated

individual outside his protected class; (2) AECOM presented legitimate, nondiscriminatory reasons supported by unrefuted evidence for terminating him; and (3) Mr. Pyatt failed to establish that those reasons were merely pretext for racial discrimination.

## II

We review a district court's application of its local rules for abuse of discretion. *See Reese v. Herbert*, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008). In doing so, we give "great deference to a district court's interpretation" of its rules. *See Clark v. Hous. Auth. of Alma*, 971 F.2d 723, 727 (11th Cir. 1992).

We review a district court's denial of a motion to extend discovery for an abuse of discretion. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Generally, we review *pro se* pleadings liberally. Nevertheless, a district court's discovery rulings "will not be overturned unless it is shown that they resulted in substantial harm to the appellant's case." *Id.* at 1307 (citation and internal quotation marks omitted). *See also Harrison v. Culliver*, 746 F.3d 1288, 1296–97 (11th Cir. 2014) (stating that a party must show, "beyond conclusory assertions, how the court's ruling resulted in substantial harm to his case") (citation and internal quotation marks omitted).

We review *de novo* a district court's decision to grant summary judgment. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). The question

7

is whether the evidence, when viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See id.* at 1263–64.

### III

Under Federal Rule of Civil Procedure 16(b), the district court must issue a scheduling order that limits the time to complete discovery. *See* Fed. R. Civ. P. 16(b)(3). Local Rule 16.1 for the Southern District of Florida governs pretrial procedure in civil actions and provides for three case management tracks: expedited, standard, and complex. *See* S.D. Fla. L.R. 16.1(a)(2). The expedited track, for non-complex cases that can be tried in one to three days, provides that discovery shall be completed between 90 to 179 days from the scheduling order. *See* S.D. Fla. L.R. 16.1(a)(2)(A). The standard track case, for cases requiring three to ten days of trial, provides for discovery to be completed within 180 to 269 days. *See* S.D. Fla. L.R. 16.1(a)(2)(B). Local Rule 16.1 states that, in determining which track to assign a case, the court will consider certain factors, including "the complexity of the case, [the] number of parties, [the] number of expert witnesses, [the] volume of evidence, [any] problems locating or preserving evidence, [the] time estimated by the parties for discovery and [the] time reasonably required for trial, among other factors." S.D. Fla. L.R. 16.1(a)(3).

8

Mr. Pyatt argues, for the first time on appeal, that the district court incorrectly applied Local Rule 16.1(a)(2)(B) when issuing the scheduling order. Mr. Pyatt states that he was entitled to 180 to 269 days to complete discovery from the date of the December 2019 scheduling order under Local Rule 16.1(a)(2)(B).

AECOM responds that Mr. Pyatt never raised this argument before the district court and, thus, has forfeited it. Moreover, it asserts that Mr. Pyatt invited the alleged error because he asked for a shorter period for discovery. Substantively, AECOM contends that the district court properly applied Local Rule 16.1.

Because Mr. Pyatt raises this issue for the first time on appeal, he has forfeited it. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330–31 (11th Cir. 2004). In any event, when the district court set the discovery deadline for April 3, 2020, it correctly considered the parties' joint planning and scheduling report, including Mr. Pyatt's specific request that the court shorten the discovery period and schedule trial for April of 2020. Therefore, even if the issue were not forfeited, Mr. Pyatt failed to explain how the district court abused its discretion.

## IV

Under Federal Rule of Civil Procedure 16, the district court's scheduling order "may be modified *only* for good cause *and* with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). To establish good cause, a party seeking an extension of a scheduling order must establish that it was unable to meet the applicable

9

deadlines "despite due diligence;" otherwise, modification is precluded. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). "[W]e have often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." *Josendis*, 662 F.3d at 1307 ("[T]hough the court had the authority to grant a *post hoc* extension of the discovery deadline for good cause, it was under no obligation to do so."). *See also Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1348–49 (11th Cir.2004) (upholding a district court's decision to exclude an expert report disclosed after the deadline expired for submission). We construe *pro se* pleadings liberally, but nevertheless require *pro se* parties to follow procedural rules. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

Mr. Pyatt argues that the court erred in denying his second motion to extend discovery because he did not have 14 months to complete discovery, as his case was not removed to federal court until September of 2019, and he was unable to enforce the Federal Rules of Civil Procedure or subpoena out-of-state witnesses prior to that date. Mr. Pyatt asserts that limiting the discovery period also violated his Fourteenth Amendment right to due process. He contends that the district court should have applied a proportionality standard in the discovery process and considered that the cost of discovery to AECOM was negligible because the documents were easily accessible to it.

10

AECOM responds that the district court did not abuse its discretion in denying both requests for extensions of the scheduling order.  It argues that Mr. Pyatt did not provide any good cause or valid reason for why he failed to complete discovery during the 14-month discovery period.  AECOM contends that Mr. Pyatt never argued below that he could not enforce the Federal Rules of Civil Procedure prior to removal or that the state court did not have jurisdiction to subject out-of-state witnesses to discovery, and those arguments are being raised for the first time on appeal.  Further, AECOM asserts that these arguments lack merit as the Florida Rules of Civil Procedure permit discovery, and Mr. Pyatt never subpoenaed any out-of-state witnesses.

Mr. Pyatt replies that the issue is not whether the district court abused its discretion in the denial of the motions to extend discovery, but whether the procedural rules in place violate his Fourteenth Amendment right to due process. Mr. Pyatt says that he did need to subpoena out-of-state witnesses, as Ms. Pownall and the investigator assigned to his case were out-of-state.

To support his second motion to extend discovery, Mr. Pyatt argued only that the discovery necessary to prove key material facts in his case was not completed. He failed to explain, however, why he was unable to complete discovery prior to expiration of the scheduling order deadlines and did not address due diligence.  *See Sosa*, 133 F.3d at 1419 (concluding that a party's lack of steps taken to acquire the

information earlier in the discovery period was a factor indicating a lack of diligence in pursuing a claim). He also failed to raise any argument about his rights under the Fourteenth Amendment until this appeal, and this argument is thus forfeited. *See Access Now*, 385 F.3d at 1330.

Even if Mr. Pyatt had established good cause, the decision to modify a final scheduling order was ultimately at the discretion of the district court. *See Josendis*, 662 F.3d at 1307. Since Mr. Pyatt failed to show good cause for the extension, the district court did not err when it denied Mr. Pyatt's second motion to extend discovery. *See id.*

**V**

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is improper [i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997) (citation and internal quotation omitted).

Under the Florida Civil Rights Act, an employer may not discriminate based on race, color, religion, sex, national origin, age, handicap, or marital status. *See*

Fla. Stat. §§ 760.01(b), 760.10. "Because the FCRA is modeled on Title VII, Florida courts apply Title VII caselaw when they interpret the FCRA." *Jones v. United Space All., LLC*, 494 F.3d 1306, 1310 (11th Cir. 2007). When a plaintiff relies on circumstantial rather than direct evidence to establish discrimination, we generally apply the burden-shifting framework articulated in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).

Under the *McDonnell Douglas* framework, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that (1) he belongs to a protected class, (2) he was subjected to an adverse employment action, (3) he was qualified to perform the job in question, and (4) his employer treated similarly situated employees outside of the class more favorably. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc); *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842–43 (11th Cir. 2000). To satisfy the fourth prong, the plaintiff must establish that a comparator is "similarly situated in all material respects," such that, objectively, the plaintiff and comparator "cannot reasonably be distinguished." *Lewis*, 918 F.3d at 1218, 1227–28 (internal quotations omitted). A similarly situated comparator will ordinarily have engaged in the same basic misconduct as the plaintiff, been subject to the same employment policy, guideline, or rule, shared the same supervisor, and shared the plaintiff's employment or

13

disciplinary history. *See id.* (noting, however, that a discrepancy between formal job titles is generally unnecessary).

If the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. If the defendant carries that burden, the burden shifts back to the plaintiff to demonstrate that "the defendant's proffered reason was merely a pretext for unlawful discrimination." *Id.* at 1220–21 (internal quotations omitted) (citing *Holifield*, 115 F.3d at 1561–62).

Here, Mr. Pyatt failed to establish a *prima facie* case of race discrimination. Specifically, Mr. Pyatt did not present evidence to show (or permit a jury to find) that other similarly situated employees were treated differently by AECOM. *See id.* at 1221. Mr. Pyatt does not advance any evidence, nor could we find any in the record, to suggest that other AECOM employees had aggressive incidents at the office and were not terminated. Hence, under the *McDonnell Douglas* framework, Mr. Pyatt cannot satisfy the first prong of the *prima facie* standard, and we affirm the district court's grant of summary judgment on this ground. *See McDonnell Douglas Corp.* 411 U.S. at 803.

## VI

We affirm the district court's denial of Mr. Pyatt's second motion to extend discovery and grant of summary judgment in favor of AECOM.

**AFFIRMED**.